St. John v. St. John's Church in Ithaca.

———•◦•———

## ST. JOHN *vs.* ST. JOHN'S CHURCH IN THE VILLAGE OF ITHACA.

In an action to recover moneys which the plaintiff has been compelled to pay upon a judgment against him and others for a trespass committed by them upon the property of another, by the direction of the defendants, the judgment in the trespass suit is competent evidence to show that such a judgment was recovered, and also to establish the fact of the commission of the trespass for which it was rendered.

Of that fact the former judgment is conclusive evidence, and estops the plaintiff in the second suit from showing the truth to be otherwise.

But whether the trespass was done *mala fide* or *bona fide* the record of the former judgment does not show. It is therefore competent for the plaintiff to prove that the act was done in good faith, and with the consent of the owner of the property.

The law will not raise an implied promise to indemnify a party for the committing of a trespass.

THIS action was brought to recover moneys which the plaintiff was compelled to pay under the following circumstances.

St. John v. St. John's Church in Ithaca.

St. John, the plaintiff, and two others, Speed and More, at a meeting of the board of trustees of St. John's Church, were directed by a resolution to take measures for removing a school house from the church lot of the defendants, and which building belonged to Miss Mary Baird. The plaintiff, Speed and More went on and removed the building, and they were sued in trespass on the ground that the defendants or their agents had no right to remove the building, and a judgment for damages was recovered against them in a suit brought by Miss Baird. That judgment, or a part of it, the plaintiff paid, and then brought this action against the defendants to recover the moneys thus paid. The record of the judgment in the suit of Mary Baird against the plaintiff, Speed and More, was put in evidence, and Speed being sworn for the plaintiff, testified that they understood that they had no right to remove the building at the time they did, without the consent of Miss Baird, and that they supposed it could not be legally removed without her consent. The plaintiff at this stage of the case offered to prove by this witness that Miss Baird gave her consent to the removal of the building. This evidence was objected to by the defendant's counsel, on the ground that the record of the judgment in the suit of Mary Baird against St. John, Speed and More, was conclusive upon them as to this question, and showed that no consent was given. The court sustained the objection and rejected the evidence.

*Ferris & Cushing*, for the plaintiff.

*Beers & Dana*, for the defendants.

*By the Court*, MASON, J.  The principle is an elementary one that no court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. If the plaintiff's cause of action arise *ex turpi causa*, or the transgression of a positive law of the land, then the courts hold that he is not entitled to invoke the aid of the court to assist him. The maxim is " *Ex dolo malo non oritur actio.*" It is a general doctrine of the common law that there can be no reimbursement or contribution,

whether they are principals or agents, in such a case.    Thus, if
A. recover in tort against two defendants and levy the whole
damages on one, that one cannot recover a moiety against the
other, for his contribution.    (*Merriweather* v. *Nixum*, 8 *T. R.*
186.    1 *Camp. R.* 345.    2 *Id.* 453.)    The maxim is when both
are equally in fault, "*potior est conditio defendentis.*"    This
rule is illustrated by a multiplicity of cases which might be re-
ferred to in the books, but the rule is found stated with some
shades of qualification.    The rule is illustrated in the case of
principal and agent.    The rule is stated thus in *Dunlap's Paley
on Agency*, page 152.    " If an agent, at the request of his prin-
cipal, engage in the commission of an act which at the time is
known to be a trespass, even a promise of indemnity would not
be binding upon the principal."    This rule is recognized in
many cases ; while on the other hand, it has been repeatedly
adjudged that a promise to indemnify is binding, if the agent
acted in good faith, not knowing that he was committing a tres-
pass.    (*Coventry* v. *Barton*, 17 *John.* 142.    *Stone* v. *Hooker*,
9 *Cowen*, 154.    *Story on Agency*, § 339.    14 *Pick. Rep.* 174.
2 *John. Cas.* 52.    4 *Bing.* 66.    2 *Sumn. R.* 389.    8 *Carr. &
Payne*, 417.    4 *Cowen*, 40.    *Smith on Merc. Law*, 109.    2 *Ad.
& Ellis*, 57.)    But as to the question whether in such a case
the law will imply a promise of indemnity when the agent has
followed the directions of the principal, there appears to be some
conflict of opinion in the books.    It is said in *Dunlap's Paley
on Agency*, page 153, that " Although at the time the act is com-
mitted it were not known to the agent to be a trespass, yet if
eventually it turn out to be so, a promise of indemnity will not
be implied, and neither in such a case is there any ground for
contribution if the whole damages recovered for the trespass are
levied against the agent "    And it is said by Justice Cowen, in
his treatise, page 150, 2d edition, that a wrongdoer is not liable
to contribution, without an express promise.    While on the other
hand the rule is laid down in *Story on Agency*, p. 429–30, § 339,
that " there is no difference whether there is a promise of in-
demnity or not; for the law will not enforce a contract of indem-
nity against a known and meditated wrong : and on the other

St. John *v.* St. John's Church in Ithaca.

hand, where the agent acts innocently and without notice of the wrong, the law will imply a promise on the part of the principal to indemnify him." I have looked into the cases cited by the learned commentator in the text, and find that they are cases where the conduct and representations of the principal were calculated to induce the agent to believe he was acting innocently while the principal knew he was not; and many of them are cases where an auctioneer has sold goods which were in the possession of the principal, and which he represents as belonging to him, knowing it to be otherwise, when afterwards it turns out that he had no title, and the agent is sued and a judgment obtained against him for their value. Upon the same principle the case of *Betts and Drewe* v. *Gibbins*, (2 *Ad. & Ellis*, 67,) was decided. In these cases the principal would be permitted to practice a fraud upon the agent were he not held liable, if the law did not require him to make indemnity. And the case of *Allaire* v. *Ouland*, 2 *John. Cas.* 52,) where A. directed his servant B. to enter a certain meadow which he said belonged to him but was in fact the meadow of C., might be determined upon the same principle. There was however an express promise to indemnify in that case. I have not been able to find any adjudged case that holds the doctrine that where the principal directs his agent to go and do an act to the property of another which is at the time in the possession of such other person, and which act would render the agent a trespasser, the agent could recover of the principal upon an implied promise of indemnity, where the agent had been subjected to damages; unless the principal had deceived the agent. The same rule, with its modifications above stated, applies to the case of public officers. (4 *Cowen*, 340.) In the case at bar, J. J. Speed testified that the committee understood they had no legal right to remove the building at the time they did it, but it was a matter of convenience to go on with the work; and More and the plaintiff urged the witness to go to Miss Baird and get her consent before the time expired when it could legally be removed; and with her consent, he says, the committee supposed it would be all right. The plaintiff then offered to prove by this witness, that Miss

Baird gave her consent to the removal of the building, and that such consent was communicated to the other members of the committee.   This evidence was objected to by the defendants' counsel, on the ground that the record of the judgment in the case of Mary Baird against St. John, More and Speed, showed that no consent was had, and that as the plaintiff relied upon that record as the basis to show that he had been compelled to pay the money which he seeks to recover in this suit, he is estopped by the record from denying a material part of the record ; or, in other words, from proving that the judgment ought not to have been rendered, it being thereupon agreed by both parties that the record be deemed in evidence.   The objection was sustained by the court and the evidence excluded, and the plaintiff's counsel excepted.   There is no doubt but this proof was improperly rejected.   The judgment in the trespass suit of Mary Baird against More, Speed and St. John, was undoubtedly properly allowed in evidence, and that judgment was binding upon the plaintiff in this suit.   A judgment is offered either to establish the mere fact of its own rendition, and those legal consequences which result from the fact, or it is offered with a view to a collateral purpose ; that is, to prove not only the fact that such a verdict has been rendered, or such a judgment pronounced, and so let in all the legal necessary consequences, but as a medium of proving some fact as found by the verdict, or upon whose supposed existence the judgment is based.   For the first of these purposes—that is, for the purpose of establishing the fact that such a verdict has been given, or such a judgment pronounced, and all the legal consequences of such a judgment—the judgment itself is invariably not only admissible as the proper legal evidence, but usually conclusive evidence to prove that fact ; for it must be presumed that the court has made a faithful record of its own proceedings ; and in the next place, the mere fact that such a judgment was given, can never be considered as *res inter alios acta,* being a thing done by public authority.   Neither can the legal consequences of such a judgment be ever so considered ; for where the law gives to a judgment a particular operation, that operation is properly shown and demonstrated by means of

St. John *v.* St. John's Church in Ithaca.

the judgment, which is no more *res inter alios* than the law which gives it force. (2 *Cowen & Hill's Notes, pp.* 820, 821.) But with reference to any fact upon the supposed existence of which the judgment is founded, the proceedings may or may not be *res inter alios,* according to circumstances. (2 *Cowen & Hill's Notes,* 821. *See pp.* 822, 823, 824.)

There is no doubt but this judgment in the suit of *Mary Baird* v. *More, Speed and St. John,* is competent evidence in the suit under consideration, to show that such a judgment was recovered, and also to establish the fact upon the existence of which that judgment was rendered; or, in other words, to establish the fact that the plaintiff in this suit and one of the defendants in that suit, had committed a trespass upon the property of Mary Baird, in removing that building. And of such fact, that judgment was conclusive evidence, and estops the plaintiff in this suit to show it otherwise. (2 *Cowen & Hill's Notes,* 821, 822, 823, 824.) But that record establishes nothing upon the point which this rejected evidence was offered to show or establish. As to whether the plaintiff, Speed and More, acted in good faith, believing that they were legally authorized to remove Miss Baird's building, or not, that judgment does not and cannot show. The judgment does establish the fact that these defendants, in that judgment, committed a trespass upon Miss Baird, as we have already said; but whether such act was done *mala fide* or *bona fide,* the judgment does not show. It was therefore competent for the plaintiff to show, if he could, that it was done in good faith; and with such view the rejected evidence was offered. That evidence, therefore, was improperly rejected, and there must be a new trial granted in this case, as this is a bill of exceptions; unless the court is able to say that the admission of that evidence cannot, taken in connection with the whole case, ever constitute the basis of a recovery. I have no hesitation in saying that if that evidence had been allowed by the judge, upon the trial, the plaintiff could not have recovered upon the evidence appearing in the case on that trial; for the reason that there is an utter failure of evidence to show any express promise to indemnify, or any

kind of a promise by this corporation to indemnify the plaintiff and Moore and Speed, for doing the act for which they have been convicted of a trespass; and we have already seen the law will not raise an implied promise to indemnify them. The plaintiff, however, may be able to show, upon another trial, an agreement to indemnify them; and the safer rule is, where there has been a rejection of competent evidence, which is material to establish a given branch of the case, to grant a new trial.

New trial granted; costs to abide the event.

[Tompkins General Term, September 2, 1851. *Shankland*, *Mason* and *Monson*, Justices.]